STATE of Wisconsin, Plaintiff-Respondent,†

v.

CITY OF OAK CREEK, Defendant-Appellant.

Court of Appeals

*No. 97–2188. Submitted on briefs September 29, 1998.—Decided November 24, 1998.*

(Also reported in 588 N.W.2d 380.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Lawrie J. Kobza, Jennifer S. Mirus* and *M. Tess O'Brien-Heinzen* of *Boardman, Suhr, Curry & Field*, of Madison, and *Lawrence J. Haskin*, city attorney, of Oak Creek. There was oral argument by *Lawrence J. Haskin*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Joanne F. Kloppenburg*, assistant attorney general. There was oral argument by *Joanne F. Kloppenburg*.

Before Fine, Schudson and Curley, JJ.

FINE, J.   In 1994, we upheld a determination by the circuit court that Crawfish Creek in the City of Oak Creek was a "navigable waterway," that Oak Creek's channelization of Crawfish Creek violated § 30.12, STATS., that § 30.055, STATS., 1993–94, a statute enacted by the legislature purporting to exempt Crawfish Creek from the requirements of § 30.12, was unconstitutional, and that the creek had to be restored to its pre-channelization condition. *See City of Oak Creek v. Department of Natural Resources*, 185 Wis. 2d 424, 518 N.W.2d 276 (Ct. App. 1994).[1] After our decision, the legislature re-enacted the exemption. *See*

---

[1] Section 30.12(1), STATS., provides, in part:

[U]nless a permit has been granted by the department [Department of Natural Resources] pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:

(a)   To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or

(b)   To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line.

Section 30.055, STATS., 1993–94, provided:

**Exemption from certain permit requirements.** Notwithstanding ss. 30.12, 30.19, 30.195 and 30.294, the city of Oak Creek may not be required to remove any structure or concrete or other deposit that was placed in Crayfish [C]reek in the city of Oak Creek before June 1, 1991, and may continue to maintain the structure, concrete or deposit without having a permit or other approval from the department.

"Crawfish Creek," as used in this decision and the one that we issued in 1994 is the "Crayfish Creek" referenced by the statute. *See City of Oak Creek v. Department of Natural Resources*, 185 Wis. 2d 424, 435 n.7, 518 N.W.2d 276, 279 n.7 (Ct. App. 1994).

§ 30.056, STATS., 1995–96; 1995 Wis. Act 455, § 1g (effective July 11, 1996).[2]

This action was brought by the attorney general in the name of the State of Wisconsin, seeking a declaration that § 30.056, STATS., 1995–96, is unconstitutional. He claims that it violates the "public trust" doctrine set out in Article IX, § 1 of the Wisconsin Constitution, violates the guarantees of "equal protection" found in both the United States Constitution and the Wisconsin Constitution, and is a private bill in violation of Article IV, § 18 of the Wisconsin Constitution. The attorney general also sought to have Oak Creek's channelization of Crawfish Creek declared to be a nuisance, both under § 30.294, STATS., and the common law, and an order requiring Oak Creek to restore Crawfish Creek to its pre-channelization condition.

Section 30.294, STATS., declares: "Every violation of this chapter is declared to be a public nuisance and may be prohibited by injunction and may be abated by legal action brought by any person." The circuit court concluded that § 30.056 was unconstitutional, and, on summary judgment, granted the relief requested by the attorney general. Oak Creek appeals, contending, among other things, that the attorney general may not challenge the constitutionality of the statute.

---

[2] Section 30.056, STATS., 1995–96, is identical to § 30.055, STATS., 1993–94. Section 30.056 provides:

**Exemption from certain permit requirements.** Notwithstanding ss. 30.12, 30.19, 30.195 and 30.294, the city of Oak Creek may not be required to remove any structure or concrete or other deposit that was placed in Crayfish Creek in the city of Oak Creek before June 1, 1991, and may continue to maintain the structure, concrete or deposit without having a permit or other approval from the department.

The parties do not dispute but that the attorney general qualifies as "any person," *cf. Gillen v. City of Neenah*, 219 Wis. 2d 807, 829–830, 580 N.W.2d 628, 636 (1998) *(per curiam)* (reading § 30.294 expansively); the only issue is whether he may challenge the constitutionality of § 30.056, STATS., 1995–96. We conclude that he may not. Accordingly, we do not discuss the other issues.[3]

Article VI, § 3 of the Wisconsin Constitution sets the scope of the attorney general's authority: "The powers, duties and compensation of the treasurer and attorney general shall be prescribed by law." This clause means that the attorney general in Wisconsin has no powers other than those specified by the legislature. *See State v. Milwaukee Electric Ry. & Light Co.*, 136 Wis. 179, 190, 116 N.W. 900, 905 (1908); *State v. Snyder*, 172 Wis. 415, 417, 179 N.W. 579, 580 (1920) (The attorney general's "duties spring from the statute, and he must find authority in the statute when he sues in the circuit court in the name of the state or in his official capacity."). Other than the narrow exception that permits challenges to legislative apportionments, *see State ex rel. Reynolds v. Zimmermann*, 22 Wis. 2d 544, 552, 126 N.W.2d 551, 556 (1964), "it is the attorney general's duty to defend the constitutionality of state statutes," *Public Intervenor v. Department of Natural Resources*, 115 Wis. 2d 28, 37, 339 N.W.2d 324, 327 (1983).

Although the facts here and there are not one-hundred percent congruent, *Public Intervenor* is dispositive. At the time the case was decided, the public intervenor was an assistant attorney general in the

---

[3] *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

Wisconsin Department of Justice. *See* § 165.07, STATS., 1981–82.[4] As such, the public intervenor was given

---

[4] Section 165.07, STATS., 1981–82, provided:

**Assistant attorney general—public intervenor.** The attorney general shall designate an assistant attorney general on his staff as public intervenor. Written notices of all proceedings under chs. 30, 31, 144 and 147 shall be given to the public intervenor and to the administrators of divisions primarily assigned the departmental functions under chs. 29 and 144 by the agency head responsible for such proceedings. A copy of such notice shall also be given to the scientific areas preservation council. The public intervenor shall formally intervene in such proceedings when requested to do so by an administrator of a division primarily assigned the departmental functions under ch. 29 or 144. The public intervenor may, on his own initiative or upon request of any committee of the legislature, formally intervene in all such proceedings where such intervention is needed for the protection of "public rights" in water and other natural resources, as provided in chs. 30 and 31 and defined by the supreme court. Personnel of the department of natural resources shall upon the request of the public intervenor make such investigations, studies and reports as he may request in connection with such proceedings, either before or after formal intervention. Personnel of state agencies shall at his request provide information, serve as witnesses in such proceedings and otherwise cooperate in the carrying out of his intervention functions. Formal intervention shall be by filing a statement to that effect with the examiner or other person immediately in charge of the proceeding. Thereupon the public intervenor shall be deemed a party in interest with full power to present evidence, subpoena and cross-examine witnesses, submit proof, file briefs or do any other acts appropriate for a party to the proceedings. He may appeal from administrative rulings to the courts and in all administrative proceedings and judicial review proceedings he shall be identified as "public intervenor". This section does not preclude or prevent any division of the department of natural resources, or any other department or independent agency from appearing by its staff as a party in such proceedings.

The public intervenor is now an attorney in the Department of Natural Resources, *see* § 23.39(1), STATS., and is answerable to the Public Intervenor Board, *see* § 23.39(2) & (5), STATS.; § 15.345(4), STATS.

authority to intervene as a party in interest in proceedings under chapters 30, 31, 144, and 147 of the Wisconsin Statutes when requested to do so by the officers designated by § 165.07. *See ibid.* Following formal intervention as envisioned by the statute, the public intervenor had full right of participation in the proceedings, including the right to "appeal from administrative rulings to the courts." *Ibid.* The public intervenor in *Public Intervenor* attempted to challenge the constitutionality of a provision of the administrative code promulgated by the Department of Natural Resources pursuant to authority given to the department by statute. *See Public Intervenor*, 115 Wis. 2d at 29, 339 N.W.2d at 324–325. The supreme court held that neither the public intervenor, an assistant attorney general, nor the attorney general, could, absent legislative authority, challenge the rule's constitutionality:

> Nowhere is there a statutory provision giving the attorney general or his assistants the power to challenge the constitutionality of a law or rule of this state or one of its agencies. To the contrary, it is the attorney general's duty to defend the constitutionality of state statutes.

*Id.*, 115 Wis. 2d at 36–37, 339 N.W.2d at 327 (internal citation omitted). In essence, as an assistant attorney general, the public intervenor's authority to challenge the constitutionality of the code provision could rise no higher and be no broader than the authority of the attorney general. *Ibid.* [5] This is the supreme court's last

---

[5] Significantly, following the supreme court's decision in *Public Intervenor*, the legislature granted to the public intervenor "the authority to initiate actions and proceedings before any agency or court in order to raise issues, *including issues*

word on the subject, and we won't quibble with the dissent as to whether or not the supreme court's declaration is dictum—the discussion of the attorney general's powers as they relate to the powers of an assistant attorney general in the department over which the attorney general presides was clearly germane to the holding of *Public Intervenor* and thus is binding law.[6] *See Malone v. Fons*, 217 Wis. 2d 746, 754, 580 N.W.2d 697, 701 (Ct. App. 1998) ("When an appellate court intentionally takes up, discusses and decides a question germane to a controversy, such a decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision.") (citation, internal quotation marks and brackets omitted). Significantly, in *Public Intervenor* the assistant attorney general designated by the attorney general to be the public intervenor was a proper party under the applicable statute because he was empowered to "appeal from administrative rulings to the courts." Section 165.07, STATS., 1981–82. Here, the attorney general is a proper party because he is an "any person" under § 30.294, STATS. Nevertheless, the public intervenor there was, and the attorney general here is, to use the dissent's language, "precluded from offering a legal argument in support of [the official's] valid legal action." Dissent at 228. Even under the rationale of the dissenting justices in *Public Intervenor*, who argued that the public intervenor should be permitted to chal-

---

*concerning constitutionality.*" 1983 Wis. Act 410, § 102 (emphasis added).

[6] Although the State's brief cites many cases where the attorney general has challenged the constitutionality of legislation, the State admitted on oral argument that in none of the cases was the power of the attorney general to do so either disputed (as it is here) or decided.

lenge the code provision because it was in the scope of his "official duty to do so," *Public Intervenor*, 115 Wis. 2d at 45, 339 N.W.2d at 331 (Bablitch, J., dissenting), the attorney general would not be authorized to make the constitutional challenge at issue here. Challenging the constitutionality of § 30.056, STATS., 1995–96, is not an "official duty" of the attorney general. Rather, he is here as a member of the general public—an "any person," as that phrase is used in § 30.294.

*Public Intervenor*'s recognition that the attorney general in Wisconsin has limited powers and, accordingly, the "duty to defend"—not attack—"the constitutionality of state statutes," reflects the law in jurisdictions where the powers of the attorney general are similarly limited. *See State ex rel. Attorney General v. Burning Tree Club, Inc.*, 481 A.2d 785, 797, 799 (Md. 1984) ("Attorney General of Maryland has only such powers as are vested in him by the Constitution of Maryland and the various enactments of the General Assembly of Maryland," and may not maintain an action that "seeks to have an act of the General Assembly declared unconstitutional."). Neither the dissent nor the attorney general has pointed to any statute authorizing the attorney general to challenge the constitutionality of statutes, and we have found none. Although § 30.294, STATS., permits the attorney general, as an "any person," to seek to abate what he considers to be a "nuisance" under chapter 30, he may not assert that § 30.056, STATS., which exempts Crawfish Creek in Oak Creek from the relevant provisions of chapter 30, is unconstitutional.

*By the Court.*—Judgment reversed.

SCHUDSON, J. *(dissenting)*. As the majority points out, "[t]he parties do not dispute but that the attorney general qualifies as 'any person'" under § 30.294, STATS., majority op. at 223, and, therefore, has statutory authority to seek an injunction to abate what, under *City of Oak Creek v. Department of Natural Resources*, 185 Wis. 2d 424, 443–51, 518 N.W.2d 276, 282–85 (Ct. App. 1994), has already been declared a public nuisance. Indeed, in its brief to this court, Oak Creek implicitly conceded the attorney general's standing to do so and, at oral argument, explicitly confirmed that concession.

The only remaining issue, therefore, is whether the attorney general can be denied the opportunity to offer an argument, in support of its action seeking the injunction, challenging the constitutionality of the statute enacted for the singular purpose of circumventing this court's decision in *City of Oak Creek*. Or, were we to phrase this purely in terms of standing, the remaining issue would be whether the attorney general, as "any person" having standing to seek an injunction under § 30.294, STATS., somehow automatically loses that standing by making a constitutional challenge to that statute.

No authority supports the apparently preposterous notion that, absent waiver, a party can be precluded from offering a legal argument in support of its valid legal action. Thus, not surprisingly, the majority's conclusion rests on only one case: *Public Intervenor v. Department of Natural Resources*, 115 Wis. 2d 28, 339 N.W.2d 324 (1983), in which the supreme court stated, "Nowhere is there a statutory provision giving the attorney general or his assistants the power to challenge the constitutionality of a law or rule of this state or one of its agencies." *Id.* at 36, 339

N.W.2d at 327 (citation omitted). A careful reading of the supreme court's complete decision, however, reveals that *Public Intervenor* does not preclude the attorney general from challenging Oak Creek's legislative maneuver. Indeed, carefully considered, *Public Intervenor* confirms the attorney general's opportunity to challenge this end-around statute in order to support its statutorily authorized legal action to abate a public nuisance.

*Public Intervenor* explicitly and repeatedly addresses "whether the *public intervenor* . . . has standing to challenge the constitutionality of an administrative code." *Id.* at 29, 339 N.W.2d at 324 (emphasis added). *See generally id.* at 29–40, 339 N.W.2d at 324–29. Then, inexplicably, and without providing any authority or even any transitional language, the supreme court breaks from its explicit analysis of the authority of the *public intervenor*, and writes, "Wisconsin has specifically limited the powers and duties of the *attorney general*," *id.* at 35, 339 N.W.2d at 327 (emphasis added).

This is dicta, and logically flawed dicta to be sure. In *Public Intervenor*, as a matter of fact and law, the public intervenor and the attorney general were *adversaries*. In *Public Intervenor*, the supreme court had to determine *not the authority of the attorney general* who opposed the public intervenor, but rather, *the separate and specific statutory authority of the public intervenor. See* § 165.07, STATS., 1981–82; majority op. at 224 n.4. Therefore, not only was the supreme court's discussion of the *attorney general's* authority a slip into an area wholly unnecessary to the determination of the case, *see State v. Sartin*, 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449, 454 n.7 (1996) ("Dicta is a statement or language expressed in a court's opinion which extends beyond

the facts in the case and is broader than necessary and not essential to the determination of the issues before it."), but its suggestion that the authority of the attorney general and the public intervenor could somehow be equated was a complete fall into an illogical hole.

Moreover, even if we were to accept this dicta—and thus accept that the public intervenor in *Public Intervenor* and the attorney general in *Oak Creek* are to be equated for. the purpose of analyzing whether the attorney general may challenge the constitutionality of the statute in the instant case—*Public Intervenor* actually would support the attorney general's position under the following syllogism:

> (a) *Public Intervenor* states: "[F]or the public intervenor to challenge the constitutionality of this administrative rule, he must have standing conferred from his statutory creation and authority." *Id.* at 40, 339 N.W.2d at 329.

> (b) In the instant case, as Oak Creek concedes, the attorney general has standing, by virtue of "statutory creation and authority" under § 30.294, STATS., as "any person," to bring a legal action to abate a public nuisance.

> (c) Therefore, *unlike the public intervenor in Public Intervenor*, the attorney general has standing to challenge the statute in the instant case.

Only one passage in *Public Intervenor* could conceivably undermine this analysis. Quoting *Columbia County v. Wisconsin Retirement Fund*, 17 Wis. 2d 310, 316, 116 N.W.2d 142, 145–46 (1962), the supreme court writes: " 'Standing on the threshold of the constitutional issues is the question whether the plaintiffs have the legal capacity to sue *and* the right to contest the constitutionality of ch. 459, Laws of 1961.' " *Public*

230

*Intervenor*, 115 Wis. 2d at 40, 339 N.W.2d at 329 (emphasis added). This, perhaps, implies the otherwise novel notion that standing itself has two components, the second of which is "the right to contest the constitutionality." *See id.* (citation omitted).

But *Public Intervenor*'s invocation of *Columbia County* is so obviously erroneous as to be almost lyrically laughable. In *Columbia County*, the supreme court *begins* its opinion by stating, "Standing on the threshold," *Columbia County*, 17 Wis. 2d at 316, 116 N.W.2d at 145, as in the musical refrain, "standing on the corner." Measured grammatically, syntactically, and logically, the supreme court's introductory phrase in *Columbia County* simply was *not* referring to *legal standing*. Therefore, *Public Intervenor*'s critically important quotation of *Columbia County* establishes that *Public Intervenor*'s non-sensical dicta rests on an illogical premise.[1]

---

[1] Were this not enough to jettison *Public Intervenor*'s reliance on *Columbia County*, also consider that *Columbia County* involved an action not by the attorney general, but rather, by eight Wisconsin counties. Thus, *Columbia County* can be and has been cited for the proposition that political subdivisions of the state have no capacity to make constitutional challenges to state statutes. *See, e.g., Buse v. Smith*, 74 Wis. 2d 550, 562, 247 N.W.2d 141, 147 (1976); *City of Madison v. Ayers*, 85 Wis. 2d 540, 544, 271 N.W.2d 101, 103 (1978). Villages, towns, cities, and counties, however, have no legal authority or responsibility to defend Wisconsin's Constitution against statutory encroachment. By contrast, the attorney general often has the "duty to defend the constitution [that] necessarily encompasses a duty to challenge . . . a statute which the Attorney General regards as constitutionally infirm." *People v. Pollution Control Bd.*, 404 N.E.2d 352, 355 (Ill. App. Ct. 1980). *See also Fund Manager v. Corbin*, 778 P.2d 1244, 1250 (Ariz. Ct. App. 1988), *modified in part*, 778 P.2d 1260 (Ariz. 1989).

Thus, I recognize that *Public Intervenor* throws the majority into a wild briar patch potentially entangling what, no doubt, would otherwise be the majority's clear confirmation of the attorney general's authority to challenge Oak Creek's outrageous circumvention of our previous decision. I conclude, however, that a most careful reading of *Public Intervenor* reveals that its entanglement is pure dicta, and its dicta is ludicrous.

Not surprisingly, therefore, elevating *Public Intervenor*'s dubious dicta to control the instant appeal will bring devastating consequences in this case and others. Not only will this public nuisance remain, but other losing litigants will be emboldened to circumvent appellate decisions determining that a statute is unconstitutional not by appealing to a higher court, but rather, by applying political pressure. Such pressure will be particularly potent in environmental cases where citizens may not be aware of environmental harm or, as may have been true here, citizens might not bring a challenge precisely because they reasonably assume the attorney general will do so. Finally, elevating *Public Intervenor*'s dicta advances the otherwise unprecedented proposition that a party may be precluded from presenting a theory, indeed an essential theory, in support of a valid legal action.

Accordingly, I respectfully dissent.