STATE of Wisconsin, Plaintiff-Respondent,

v.

Johnell SARTIN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 94–0037–CR. Oral argument January 10, 1996.—Decided
April 11, 1996.*

(Also reported in 546 N.W.2d 449.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Ellen Henak*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Maureen McGlynn Flanagan*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

JON P. WILCOX, J.   This case is before the court on petition for review of an unpublished decision of the court of appeals, *State v. Johnell Sartin*, No. 94-0037-CR (Wis. Ct. App. Feb. 21, 1995). The appellate court affirmed a judgment of conviction entered by the Milwaukee County Circuit Court, John A. Franke, Circuit Judge, after a jury found the defendant-appellant-petitioner, Johnell Sartin (Sartin), guilty of one count of possession of cocaine base with intent to deliver within

48

1,000 feet of a pool, party to a crime, contrary to Wis. Stat. §§ 161.14(7)(a), 161.41(1m)(cm)3, 161.49, and 939.05 (1991-92), and one count of possession of cocaine with intent to deliver within 1,000 feet of a pool, party to a crime, contrary to Wis. Stat. §§ 161.16(2)(b)1, 161.41(1m)(c)2, 161.49, and 939.05 (1991-92). Two issues have been presented for our review: (1) In order to convict Sartin of possession of cocaine and cocaine base with intent to deliver, was the State required to prove that the defendant knew the identity of the particular substance, or is proof of knowledge that the substance was controlled or illegal sufficient? We hold that in order to convict a defendant of possession of a controlled substance, the State was required to prove only that the defendant knew or believed that the substances which he possessed were illegal or controlled. The State is not required to prove the defendant's knowledge as to the exact nature or chemical name of the controlled substance; (2) Did the party to a conspiracy instruction erroneously deny Sartin due process of law by improperly relieving the State of its obligation, under *State v. Smallwood*, 97 Wis. 2d 673, 294 N.W.2d 51 (Ct. App. 1980), to prove his specific knowledge of the exact controlled substance involved? In accord with our holding as to the first issue, we find that Sartin's constitutional rights of due process have not been violated. The State is required only to prove that the defendant knew or believed that he possessed a controlled substance, and therefore, providing the jury with the party to a conspiracy instruction was not in error. Accordingly, we affirm the decision of the court of appeals.

The relevant facts of this case are undisputed. On January 28, 1993, Sartin's brother, Allan Mabra, called the local police and informed them that Sartin and

three others were in the process of driving Mabra's car to Milwaukee to pick up a half kilo of cocaine. Mabra described the vehicle and provided the officer with the license number. Shortly thereafter, police officers spotted the vehicle parked in front of Sartin's residence at 3071 North 19th Street. Sartin was observed walking down the sidewalk and returning to the vehicle. The police pulled in front of the vehicle, and as they approached on foot, a passenger in the rear of the vehicle threw down a clear, knotted, plastic sandwich bag containing material that resembled cocaine. The police also witnessed Trunail B., a juvenile positioned in the front passenger seat, hurriedly stuff something into the vehicle's glove compartment.

Sartin and the three others were ordered from the vehicle, and a subsequent police search produced the contraband which formed the basis for the ensuing prosecution. A clear plastic bag was found on the floor near the rear passenger door, which held 20 Ziploc baggies containing crack cocaine rocks. A black and white bag with the brand name "Fila" was found in the glove compartment. The contents of the bag included small knotted plastic bags of cocaine base rocks, an electronic scale, and a bag of powder cocaine. When the defendant was arrested, the police discovered $300 in cash on him as well as a beeper. Subsequent investigation revealed that the beeper had received more than 400 calls in the past month.

After Sartin's arrest, he made a series of custodial statements in response to police questioning over the course of the next day. At trial, a Milwaukee detective testified that Sartin had told police that he had been given $270 to transport the Fila bag to a location in Milwaukee. Detective Jones stated that Sartin had admitted that he "thought that what he was given was

probably illegal, that he suspect[ed] that the plastic bag contained either marijuana or cocaine." However, he denied any knowledge of the drugs found in the rear of the vehicle.

At the close of trial, the circuit court instructed the jury on the elements of the two drug charges. The court articulated that the first element of the possession charges was that the defendant possess cocaine base; second, the defendant knew or believed that the substance he possessed was cocaine base; third, the defendant possessed cocaine base with intent to deliver it.[1] The jury was provided with similar instructions with regard to the second count of possession of cocaine.

The circuit court proceeded to give the standard jury instruction regarding party to a crime, as well as "aiding and abetting" and "conspiracy." The jury returned guilty verdicts on both counts, and the defendant received a seven-year sentence.

On appeal, Sartin claimed that the party to the crime instruction improperly relieved the State of its burden under *Smallwood* to prove that he knew the exact nature or chemical name of the controlled substance he possessed as party to a crime. The appellate court rejected this contention, stating:

> We find this position to be without merit on the record before us. The trial court expressly instructed the jury that it could find Sartin guilty of possessing cocaine base with intent to deliver as a party to a crime only if the jury first found that the State proved by evidence beyond a reasonable doubt that 'the defendant knew or believed that the sub-

---

[1] *See* WIS JI-CRIMINAL 6035 Possession of a Controlled Substance With Intent to Deliver (1990).

stance he possessed was cocaine base.' The trial court used equally direct language to instruct the jury on count two, cautioning the jury that before it could return a guilty verdict, the jury had to find that the State proved by evidence beyond a reasonable doubt that Sartin 'knew or believed that the substance he possessed was cocaine.' Accordingly, we conclude that these instructions were legally sufficient and that Sartin's argument to the contrary is contradicted by the record.

*Sartin*, No. 94-0037-CR unpublished slip op. at 6. Having ruled that application of the jury instructions was appropriate, the court thereafter declined to address Sartin's ex post facto argument. *Id.*[2] The judgment of conviction was affirmed.

## I.

A trial judge may exercise wide discretion in selecting jury instructions based on the facts and circumstances of the case. This discretion extends to both choice of language and emphasis. *State v. McCoy*, 143 Wis. 2d 274, 289, 421 N.W.2d 107 (1988). "The court's

---

[2] A concurring opinion was authored by Judge Schudson, in which he suggested that the majority of the court had missed the issue in this case. Judge Schudson stated that the focus of the decision should have been centered upon Sartin's challenge under *Smallwood*, that the State was required to prove his specific knowledge of the exact substance which he possessed. Judge Schudson stated that "the *Smallwood* dictum on which Sartin relies is at odds with the rationale *Smallwood* offers for its holding." *Sartin*, slip op. at 2 (Schudson, J., concurring). Moreover, prevailing authority has rejected the notion that the government must prove a defendant's specific knowledge of the exact substance. *Id.*; *see United States v. Lopez-Martinez*, 725 F.2d 471, 474-75 (9th Cir.), *cert. denied*, 469 U.S. 837 (1984).

discretion should be exercised to 'fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence.' " *Id.* (citing *State v. Dix*, 86 Wis. 2d 474, 486, 273 N.W.2d 250 (1979)). Although the judge is granted such broad discretion, the question of whether the circuit court correctly instructed the jury is one of law which this court reviews de novo, without deference to the lower courts. *State v. Wilson*, 149 Wis. 2d 878, 898, 440 N.W.2d 534 (1989). The State bears the burden of proving all elements of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). "Language in a jury instruction that relieves the State of its duty to prove the element of intent beyond a reasonable doubt denies the defendant due process." *Barrera v. State*, 109 Wis. 2d 324, 329, 325 N.W.2d 722 (1982).

The determinative question in the present case is whether the circuit court's instruction to the jury on party to a conspiracy improperly relieved the State of its obligation under *Smallwood* to prove Sartin's knowledge as to the exact nature or chemical name of the substance which he possessed. In addressing this question, we first consider to what extent the accused must be aware of the precise nature of the substance he or she possesses or delivers, in order to be prosecuted under Wis. Stat. ch. 161 (1993-94), the Uniform Controlled Substances Act (UCSA). This requires an analysis of the knowledge requirement as provided under the act.

Our decision in *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990) represents the latest expression by this court of the knowledge requirement in a drug possession case. In *Poellinger*, we stated: "[T]o convict an individual of possession of a controlled

53

substance, the State must prove not only that the defendant was in possession of a dangerous drug but also that the defendant knew or believed that he or she was." *Id.* at 508. In reviewing Wisconsin precedent, the Criminal Jury Instructions Committee has recognized that there appears to be two fundamental aspects to the knowledge requirement: (1) knowing, conscious possession as opposed to accidental, unknowing possession; and, (2) knowing the *nature* of the substance knowingly possessed or delivered. (Emphasis added.)[3] The focus of our present review is on the secondary prong, the extent of the defendant's knowledge as to the exact nature of the substance possessed.

Sartin's primary argument before this court is that the UCSA is correctly interpreted as requiring proof that a criminal defendant know the exact nature or precise chemical name of the controlled substance he or she is accused of possessing or delivering. Sartin relies upon the following passage from the appellate court's decision in *Smallwood* to provide the basis for his present challenge:

> In conclusion, those cases dealing with the Uniform Controlled Substances Act have recognized that the essential element for proving an offense of delivery is that the defendant knew or believed the substance was a controlled substance. *Knowledge as to the exact nature or chemical name of the controlled substance is necessary only when the evidence points to substances of different schedules and different penalties.*

*Smallwood*, 97 Wis. 2d at 678 (emphasis added).

---

[3] *See* WIS JI-CRIMINAL 6000, Note on the Knowledge Requirement in Controlled Substance Cases, at 2-3 (1981).

Relying on the fact that marijuana is a Schedule I controlled substance,[4] while cocaine is a Schedule II controlled substance,[5] Sartin maintains that the underlined portion from *Smallwood* establishes the cornerstone for his appeal. He argues that where evidence exists that a defendant thought he possessed a different controlled substance from a different schedule than the one for which he is prosecuted, the State is then required to prove the defendant's "[k]nowledge as to the exact nature or chemical name of the controlled substance." *Id.* at 678.

The State objects to Sartin's reliance on what it considers to be simply dictum from *Smallwood* to support his interpretation of the knowledge requirement in the UCSA. The State asserts that such a reading of the act is contrary to established Wisconsin precedent and public policy. Moreover, it lacks a reasoned support in precedent from other jurisdictions. The State maintains that the well-established law in this state only requires proof that the defendant knew the substances he possessed were controlled or illegal. Proof of knowledge of the exact nature or particular controlled substance possessed is not required. We agree.

The knowledge requirement in a drug possession case under the UCSA finds its origin in this court's decision in *State v. Christel*, 61 Wis. 2d 143, 211 N.W.2d 801 (1973). The defendants in *Christel* had challenged their convictions for possession of marijuana (hashish) with intent to sell on the grounds of insufficiency of evidence to support the knowledge requirement. This court reviewed the evidence that the defendants had acted in a clandestine manner, had signed for a package not addressed to either one of

---

[4] *See* Wis. Stat. § 161.14(4)(t) (1993-94).
[5] *See* Wis. Stat. § 161.16(2)(b)1 (1993-94).

them at a home at which neither resided, and had proceeded to leave the home with the wrapped brick of hashish which had just recently been delivered, and concluded that the jury was entitled to infer knowing possession on the basis of this evidence. *Id.* at 159. Affirming the judgment of conviction, this court stated that "[u]nder § 161.30(2)(d), Stats. 1969, the prosecution must prove not only that the defendant is in possession of a dangerous drug but also that he knows or believes that he is." *Id.* at 159 (citing WIS JI-CRIMINAL 6030 and cases cited therein); and *Wright v. Edwards*, 470 F.2d 980, 981 (5th Cir. 1972) (concluding that "due process demands that the State show a specific intent to possess the prohibited substance, that is, that the act was purposely, not accidentally done").

Four years later, this court revisited the knowledge required to support proof of possession of a controlled substance in *Kabat v. State*, 76 Wis. 2d 224, 251 N.W.2d 38 (1977). In *Kabat*, a tiny amount of residue scraped from the bottom of a pipe in the defendant's apartment had formed the basis for his conviction of possession of marijuana in Manitowoc County. The issue in this case was not whether the defendant possessed a controlled substance, but whether he knew he did. *Id.* at 227. Although we held that the amount and form of the substance found in the pipe was not sufficient to impute to the defendant knowledge that the substance contained ingredients of marijuana, we articulated the appropriate test to be employed to determine knowledge, as provided in *Christel*: "To convict an individual of possession of a controlled substance, the prosecution must prove not only that the defendant was in possession of a dangerous drug but also that he knew or believed he was."

56

*Kabat*, 76 Wis. 2d at 227 (citing *Christel*, 61 Wis. 2d at 159).

Following *Kabat*, we were presented with a defendant's challenge to jury instructions following a conviction for delivery of Phencyclidine (PCP), in the case of *Lunde v. State*, 85 Wis. 2d 80, 270 N.W.2d 180 (1978). In accordance with *Christel*, the circuit court judge had instructed the jury that "in order to return a verdict of guilty, it must find beyond a reasonable doubt that the defendant delivered a controlled substance and that he knew it was a controlled substance." *Lunde*, 85 Wis. 2d at 86. After failing to make a timely objection at trial, the defendant argued on appeal that the instructions were insufficient and fatally defective, claiming that the judge should have instructed the jury that the State was required to prove that the defendant knew the substance which he delivered was PCP, the particular controlled substance at issue in the case. *Id.*

We distinguished our holding in *Christel* by recognizing that the question before the jury in *Christel* was whether the defendants knew the substance in their possession was marijuana, as opposed to some completely innocuous or uncontrolled substance. There was not the slightest doubt in *Lunde* regarding the actual nature and identity of the substance delivered by the defendant. *Id.* at 89.

After reviewing the instructions as provided to the jury, we found that there was no suggestion that the delivery of the controlled substance was innocent, accidental or inadvertent, and thus, there was no infringement upon the defendant's due process rights, as the instructions were not erroneous. *Id.* at 90. In our analysis, we recounted the very purpose of the *Christel* rule: "that is, to make sure that there be a specific intent to possess or deliver a prohibited substance." *Id.;*

57

*see also Poellinger,* 153 Wis. 2d at 508. The defendant's knowledge of the controlled nature of the substance, as well as its chemical identity, PCP, was clear from the evidence in the record. The State, however, was only required to demonstrate the defendant's knowledge as to the controlled nature of the substance. We therefore concluded that the jury was adequately instructed as to the State's burden of proof in order to convict the defendant.

We now turn to the appellate court's decision in *Smallwood,* central to Sartin's challenge on this review. In *Smallwood,* the defendant appealed a conviction for delivery of tetrahydrocannabinol (THC), claiming that the State had failed to produce evidence beyond a reasonable doubt that defendant knew the substance he delivered was THC.[6] Recapitulating the knowledge requirement as provided by this court, the appellate court summarized *Lunde* as clarifying the *Christel* holding: "[t]he purpose of the rule is to make sure that there be a specific intent to possess or deliver a prohibited substance, not a particular prohibited substance." *Smallwood,* 97 Wis. 2d at 676.

Finding Wisconsin precedent inapplicable to the precise facts before it, the court of appeals sought guidance from another jurisdiction, looking to a decision of the Georgia appellate court, *Weaver v. State,* 145 Ga.App. 194, 243 S.E.2d 560 (1978), which had addressed similar provisions in the UCSA. In *Weaver,* the defendant was the target of a controlled drug buy for the sale of THC, a Schedule I controlled substance under Georgia law. *Id.* at 562. However, a subsequent

---

[6] Although the facts as presented are sparse, the defendant apparently claimed that he thought that the substance which he possessed was another controlled substance, possibly marijuana.

58

chemical analysis determined it to be heroin, also a Schedule I substance. The defendant argued that there was therefore insufficient evidence of intent to sell heroin. Holding to the contrary, the Georgia appellate court stated:

> The appellant's misapprehension of this fact does not relieve him of criminal responsibility. The elements of the crime are the same, and the prescribed punishment is the same, for selling any Schedule I substance. An intent unlawfully to sell a controlled substance is all that is required, and this intent was properly inferable from the evidence.

*Id.* Following the Georgia court's lead in *Weaver*, but without any further analysis of the issue, the *Smallwood* court relied on the fact that THC and the substance the defendant claimed to have possessed (marijuana) were both Schedule I controlled substances in Wisconsin, stating:

> The elements of the crime are the same, and the prescribed punishment is the same. As long as these facts are present, we believe it is unreasonable to assume that the legislature intended that the State prove that the accused knew the exact nature or chemical name of the controlled substance. The only knowledge required is the knowledge of the controlled nature of the substance.

*Smallwood*, 97 Wis. 2d at 677-78.

The *Smallwood* court clearly limited its decision to the facts before it, analogizing the defendant's claimed ignorance of the actual substance possessed with that of the defendant in *Weaver*, producing an identical result. However, rather than ceasing its discussion, the appellate court proceeded to surmise that perhaps the result would be different in a case where the charged

substance and the substance the defendant thought he possessed were placed in different schedules, stating: "[k]nowledge as to the exact nature or chemical name of the controlled substance is necessary only when the evidence points to substances of different schedules and different penalties." *Id.* at 678. It is this passage that Sartin clings to in the present case.

The State suggests to this court that the above-quoted passage from *Smallwood* is merely dicta, and therefore is not controlling.[7] We agree. The question presented to the appellate court in *Smallwood* was limited to whether the State was required to prove that the defendant knew the substance possessed was THC, where THC and marijuana shared placement in Schedule I, and furnished the same penalty. In response, the court specifically articulated that the State need not prove the defendant knew the exact nature or chemical name of the controlled substance he delivered in order to be convicted. *Id.* at 677-78.

We find the court's suggestion that a different rule might apply where the perceived and actual substances are dissimilarly placed in the statutory drug schedules was unnecessary to the resolution of the issue before it, and therefore is not binding in subsequent cases as legal precedent. The primary decision relied upon by the court of appeals, *Weaver v. State*, did *not* hold that in some instances the State would be required to prove the defendant's knowledge of the particular controlled substance which he possessed. *Weaver*, 243 S.E.2d at

[7] Dicta is a statement or language expressed in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it. *State ex rel. Schultz v. Bruendl*, 168 Wis. 2d 101, 112, 483 N.W.2d 238 (Ct. App. 1992); *see also State v. Koput*, 142 Wis. 2d 370, 386 n.12, 418 N.W.2d 804 (1988).

562. Rather, the *Weaver* court simply stated that an intent unlawfully to sell a controlled substance is all that is required; the State need not prove a defendant's specific knowledge where the elements of the crime and the penalty are matching. *Id.*

We seek to reaffirm the law in Wisconsin as expressed in *Christel, Kabat, Lunde*, that portion of *Smallwood* not overruled by this opinion, and *Poellinger*: the only knowledge that the State must prove beyond a reasonable doubt in a possession of a controlled substance case is the defendant's knowledge or belief that the substance was a controlled or prohibited substance. The State is *not* required to prove the defendant knew the exact nature or precise chemical name of the substance. We expressly overrule any language in *Smallwood* which suggests that a different rule might apply where the actual and perceived substances are placed in different schedules and wield dissimilar penalties. The proof of the nature of the controlled substance is, in the statutory scheme, only material to the determination of the penalty to be applied upon conviction. *See, e.g., People v. James*, 348 N.E.2d 295, 298 (Ill. App. 1976). We find that it would be unreasonable to assume that the legislature intended that the State prove that the accused knew the exact nature or chemical name of the controlled substance.

Moreover, our decision today comports with precedent from other jurisdictions confronting similar public policy concerns. The majority of courts that have addressed this issue agree that in drug possession or delivery cases, the defendant's knowledge that he had a controlled or illegal substance is all that the State need prove; there is no requirement to prove the defendant knew the exact nature of the substance, or its

chemical designation.[8] The decision of the Ninth Circuit Court of Appeals in *United States v. Lopez-Martinez*, 725 F.2d 471 (9th Cir. 1984) demonstrates the similarity that our holding shares with decisions at the federal level.

The defendant in *Lopez-Martinez* asserted that the State was required to prove that he knowingly possessed and imported heroin, the controlled substance recovered by Border Patrol agents at the time of his arrest. He claimed, however, that he thought the substance was probably marijuana, not heroin, as eight years earlier, he had made a similar importation attempt involving a large quantity of marijuana. *Id.* at 472. The penalty scheme for the two substances was significantly different, as heroin was a narcotic drug carrying a more severe punishment. *See* 21 U.S.C. §§ 841(b)(1)(A) and 960(b)(1). Rejecting the defendant's contentions that he lacked the necessary intent to possess and import heroin and that this was not the offense charged by the grand jury, the court relied upon a number of prior cases in which similar positions had proven equally unsuccessful.[9] Reviewing the content of

---

[8] *See United States v. Quintero-Barraza*, 57 F.3d 836, 843 (9th Cir. 1995); *United States v. Cartwright*, 6 F.3d 294, 303 (5th Cir. 1993), *cert. denied*, 115 S.Ct. 671 (1994); *United States v. Berick*, 710 F.2d 1035, 1040 (5th Cir.), *cert. denied*, 464 U.S. 918 (1983); *Commonwealth v. Rodriguez*, 614 N.E.2d 649, 653 (Mass. 1993); *Carter v. United States*, 591 A.2d 233, 234-35 (D.C. App. 1991); *United States v. Zandi*, 769 F.2d 229, 234 (4th Cir. 1985); *People v. Guy*, 107 Cal. App. 3d 593, 600-01, 165 Cal. Rptr. 463, 467-68 (Cal. Ct. App. 1980); *People v. Garringer*, 48 Cal. App. 3d 827, 835, 121 Cal. Rptr. 922, 927 (Cal. Ct. App. 1975).

[9] *See United States v. Davis*, 501 F.2d 1344, 1346 (9th Cir. 1974) (holding that "[t]he government is not required to prove that the defendant actually knew the exact nature of the sub-

the drug statutes involved, the court explained that they were primarily intended to prohibit importing or possessing a controlled substance. The subsequent penalty phase, an entirely separate component, only thereafter assigns the length of incarceration dependent upon the particular substance implicated. *Id.* at 475. This characterization is consistent with the holding of other courts that the government is not required to prove the defendant's knowledge as to the specific amount of the substance possessed, despite the tremendous effect such amount can have on the penalty assessed. *See United States v. McNeese*, 901 F.2d 585, 605-06 (7th Cir. 1990); *Poellinger*, 153 Wis. 2d at 508.

The statutory design of the Wisconsin UCSA, Wis. Stat. ch. 161 (1993-94), parallels the federal statutes discussed in *Lopez-Martinez. See State v. Hecht*, 116 Wis. 2d 605, 615-16, 342 N.W.2d 721 (1984).[10] The knowledge requirement is designed to remove from the prosecution pool one who accidentally, innocently, or inadvertently possesses a controlled substance. To adopt Sartin's position that the State must prove the defendant's knowledge of the particular substance does

stance with which he was dealing"); *United States v. Jewell*, 532 F.2d 697, 698, (9th Cir.), *cert. denied*, 426 U.S. 951 (1976) (announcing that "[w]e restrict *Davis* to the principle that a defendant who has knowledge that he possesses a controlled substance may have the state of mind necessary for conviction even if he does not know which controlled substance he possesses"); and *United States v. Rea*, 532 F.2d 147, 149 (9th Cir.), *cert. denied*, 429 U.S. 837 (1976).

[10] The Uniform Controlled Substances Act was approved by the National Conference of Commissioners on Uniform State Laws in 1970. This act replaced the 1933 Uniform Narcotic Drug Act and the 1966 Model State Drug Abuse Control Act. Uniform Controlled Substances Act, 9 U.L.A. 188 (1979).

not further this policy. As the State suggests, insulating from criminal liability those defendants who knowingly deal in prohibited controlled substances, but are ignorant, mistaken, or willing to misrepresent the exact nature or chemical name of the substance which they traffic, is contrary to public policy. Expressing discontentment for the position advocated by the defendant in *James*, and Sartin in this case, the Illinois appellate court stated:

> This would lead to an absurd result, as the State suggests, that drug dealers would only be liable for selling the drug they thought they were selling. This approach would make the statute inapplicable to one who had not personally performed a chemical analysis of the substance containing the controlled substance.

*James*, 348 N.E.2d at 298.

Our decision today facilitates the intent of the statute to curb the dangerous proliferation of the drug trade, which has infiltrated the very fabric of our society. The requirement that a defendant "knowingly" distribute or possess a controlled substance adequately protects those individuals who may innocently become involved in a drug transaction by inadvertence or accident. However, one who knowingly engages in the trade of controlled substances should not profit by feigning ignorance, and subsequently relying on the State's potential inability to prove knowledge of the exact substance involved.

## II.

Finally, we address Sartin's claim that the jury instructions in this case improperly relieved the State

of the burden of proving his specific knowledge of the particular substances found in the vehicle. Sartin maintains that refusing to follow his interpretation of *Smallwood* would deprive him of a constitutional right to due process of law by violating ex post facto principles. *See* U.S. CONST. amend. XIV; WIS CONST. art. I, § 8; *State v. Kurzawa*, 180 Wis. 2d 502, 511, 509 N.W.2d 712, *cert. denied*, 114 S.Ct. 2712 (1994). Sartin theorizes that refusing to follow the dicta in *Smallwood* would effectively be removing a defense that was available at the time that the act was committed. We find this argument to be without merit. The law in Wisconsin is clear that the State is required only to prove that the defendant knew or believed that he possessed a controlled or prohibited substance. The *Smallwood* decision did not change the law, despite the erroneous suggestion that perhaps a dissimilar result would occur in a different case. This dicta does not amount to legal precedent upon which the defendant was entitled to rely for his defense, and therefore, we find that no ex post facto violation occurred here.

*By the Court.*—The decision of the court of appeals is affirmed.